UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RAMON DELAROSA,

                Petitioner,

          v.

JOHN COLVIN,

                Respondent.

**MEMORANDUM AND ORDER**

14-CV-00227 (LDH)

LaSHANN DeARCY HALL, United States District Judge:

Ramon Delarosa petitions pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus to vacate his conviction. (Habeas Petition ("Pet."), ECF No. 1.) Petitioner's claims arise from a judgment of conviction entered on March 17, 2011, in New York Supreme Court, Queens County, upon his guilty plea to a charge of assault in the first degree. (*Id.* at 1.)

## BACKGROUND

Petitioner and his brother were day laborers. (Resp't's Mem. Law Opp'n Pet. Writ Habeas Corpus ("Resp't's Mem.") at 2, ECF No. 7-1.) On December 16, 2009, Petitioner and his brother solicited a potential employer for a job that included, among other things, removing construction debris with the use of Petitioner's van. (*Id.*) As the men were discussing the details of the job assignment, James Gray approached and told the potential employer to hire him instead because he had a larger van. (*Id.*) Petitioner and Gray began to argue. (*Id.*) Petitioner then retrieved a three-foot-long level from his van and struck Gray in the head. (*Id.*) Gray suffered fractures to the right eye socket, loss of vision in one eye, cerebral bleeding, and a concussion. (*Id.*) Petitioner was charged with assault in the first degree, assault in the second degree, and criminal possession of a weapon in the first degree. (*Id.*)

1

A plea hearing was held on January 20, 2011. (Jan. 20, 2011 Plea Hr'g Tr., ECF No. 8-1.)[1] During the hearing, the court explained to Petitioner the potential consequences of being convicted by a jury versus the sentence that would be imposed if he opted to plead guilty. (*Id.* at 2–3.) The court also noted that Petitioner's counsel had advised the court that he had discussed with Petitioner the "potential immigration consequences" of his guilty plea. (*Id.* at 4.) After a brief conference with counsel, Petitioner advised the court that he was not ready to make a decision. (*Id.* at 5.) The court responded "[e]ither you indicate you are accepting my offer of the minimum sentence or we are proceeding to trial. This is happening today and it is happening now." (*Id.*) After another brief recess, Petitioner informed the court of his intention to plead guilty. (*Id.* at 6.) The court then explained to Petitioner that by pleading guilty, he was acknowledging that he had intentionally caused serious physical injury to Mr. Gray by using a dangerous instrument. (*Id.* at 7–8.) Petitioner replied "no." (*Id.* at 8.) The court replied "so we are going to trial," to which Petitioner responded "[w]e are going to trial." (*Id.*) After this exchange, the court called for the jury panel, and then recessed. (*Id.* at 11.) After the recess, Petitioner informed the court that he wished to accept the plea offer. (*Id.*) When asked whether he was admitting that he intentionally caused Mr. Gray serious physical harm by means of a dangerous instrument, Petitioner responded "[y]es, your Honor." (*Id.* at 11–12.) Petitioner waived his right to appeal and the court accepted the guilty plea. (*See id.* at 12–13.)

Prior to sentencing, Petitioner moved to withdraw his guilty plea, arguing that his prior counsel was ineffective for failing to advise him concerning the defense of justification. (R. 1-

---

[1] ECF No. 8-1 comprises several state-court transcripts. The September 23, 2010 hearing begins on page 1. The November 18, 2010 hearing begins on page 22. The January 20, 2011 change-of-plea hearing begins on page 56. The March 17, 2011 hearing on Petitioner's motion to withdraw his plea begins on page 69. The sentencing hearing, also held on March 17, 2011, begins on page 92.

8.)[2]  On March 17, 2011, the trial court held a hearing on the motion.  (R. 33.)  At the hearing, Petitioner testified that when the court first explained the consequences of his plea, his attorney, Thomas Sidoti, "told [him] to take the plea."  (Mar. 17, 2011 Mot. Withdraw Plea Hr'g Tr. 7, ECF No. 8-1.)  Petitioner maintained that throughout the plea proceedings, the judge and Mr. Sidoti spoke at the same time and Mr. Sidoti was urging Petitioner to take the plea while the judge was speaking, and advised Petitioner that the court was "begging [him] to take the plea."  (*Id.* at 7–9.)

Mr. Sidoti also testified.  According to Mr. Sidoti, Petitioner had indicated he understood the consequences of entering a plea of guilty and understood the court's questions, "or expressed to [Mr. Sidoti] that he did."  (*Id*. at 16–17.)  Mr. Sidoti, however, "believed Petitioner was just uncomfortable with spending more time in prison."  (*Id*. at 15.)  Mr. Sidoti also testified that during a recess of the plea proceedings, he tried to further convince Petitioner to plead guilty, and indicated to Petitioner that "if he didn't go through with [the plea], it was such a risk that [Petitioner] was looking at significantly more time in jail."  (*Id.* at 19.)

The court denied Petitioner's motion and determined that although Petitioner was reluctant to plead guilty, Petitioner "certainly had enough time to consider his options."  (Mar. 17, 2011 Sentencing Hr'g Tr. 2-3, ECF No. 8-1.)  The court imposed a five-year prison sentence to be followed by a two-and-a-half-year term of post-release supervision.  (*Id*. at 4.)

Petitioner appealed his conviction to the Appellate Division, Second Department, arguing that his guilty plea was not knowing, voluntary, and intelligent because the trial court did not make an inquiry as to a justification defense.  (R. 14–29.)  On March 27, 2013, the Appellate Division affirmed Petitioner's conviction, finding the claim "unpreserved for appellate review, as

---

[2] Citations to "R." refer to the state-court record.  (ECF No. 8.)

3

the [petitioner] did not raise this specific ground in his motion to withdraw his plea." *People v. Delarosa*, 960 N.Y.S.2d 915, 915 (App. Div. 2013). The Appellate Division continued, "inasmuch as [Petitioner's] recitation of the facts underlying the crime to which he pleaded guilty did not cast significant doubt upon his guilt or otherwise call into the question the voluntariness of his plea, the [trial court] did not have a duty to inquire further to ensure that [Petitioner's] plea of guilty was knowing and voluntary." *Id.* On May 30, 2013, the Court of Appeals denied Petitioner's request for leave to appeal. *People v. Delarosa*, 993 N.E.2d 1277 (N.Y. 2013).

On January 2, 2014, Petitioner filed the instant petition raising the following claims: (1) his guilty plea was unlawfully induced or not made voluntarily with understanding of the nature of the charges and consequences of the plea; (2) he was denied effective assistance of counsel; (3) his conviction was obtained by the unconstitutional failure of the prosecution to disclose evidence that was favorable to Petitioner in violation of *Brady v. Maryland*; and (4) his conviction violated the Fifth Amendment right against self-incrimination in that it was obtained through the use of a coerced confession. (Pet. at 5–6.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, an application for a writ of habeas corpus by a person in custody pursuant to a state-court judgment may only be brought on the grounds that his custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state-court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the

4

State court proceeding." 28 U.S.C. § 2254(d); *Johnson v. Williams*, 568 U.S. 289, 292 (2013).

## DISCUSSION

"Under 28 U.S.C. § 2254(b), applicants for habeas relief serving state sentences must first exhaust all state remedies." *Ramirez v. Att'y Gen. of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001). State remedies are deemed exhausted where a petitioner has "(i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Id.* Here, Petitioner has not satisfied these requirements with respect to any claim raised.

Petitioner seeks relief on the grounds of ineffective assistance of counsel, prosecutorial misconduct in violation of *Brady*, and the violation of his right against self-incrimination. However, Petitioner's appeal to the Appellate Division related only to the voluntariness of his plea. (*See* R. 14–29.) Because Petitioner failed to previously raise any of the other claims asserted here, those claims are not exhausted for the purposes of this petition.

Petitioner's claim regarding the voluntariness of his plea is likewise unexhausted. Although Petitioner previously appealed his conviction on the grounds that his plea was not voluntary, he did so on a different factual basis. Before the Appellate Division, Petitioner contended that his guilty plea was involuntary because the trial judge failed to inquire further into a potential justification defense. (R. 22–23.) Nowhere in the instant petition does Petitioner complain that the trial court failed to inquire as to justification. Instead, here, Petitioner argues that his guilty plea was involuntary because the trial judge acted "unethically." (Pet. at Ex. A.) Petitioner's entire argument on this claim is as follows:

> On January 20, 2011, Hon. Kron violated Mckinney's Rules of the Court, Standard and Admin Policies, Part 100, Judicial Conduct Sec 100.4, when he acted

> unethically and prejudice towards me by forcing me to take a plea, which in fact, he stated "The decision is made for you [sic] Either you indicate you are accepting my offer of minimum sentence [sic] or we are proceeding to trial . . . . this is happening today and it's happening [sic] now." (*See* Exh 'JC, pg 2–3'). As illustrated, Hon. Barry Kron through his unprofessional behavior threatened, coerced and found me guilty on our first acquaintance without any insights on the 13-month long case at the time. Further, that it's a contradiction what we're led to believe "Innocent until proven guilty", which, proves how depraved this judge acted in a court of law.

(*Id.*)

The distinction between the factual underpinnings of the claim here versus the claim as it was asserted previously is fatal to the instant petition. That is, "[i]n order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of *both* the factual and the legal premises of the claim he asserts in federal court." *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (emphasis added). "Specifically, he must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Id*. Such is the case here. Accordingly, Petitioner's claim regarding the voluntariness of his plea is unexhausted for the purpose of federal habeas review.

Although under certain circumstances the failure to exhaust may be excused, Petitioner has not demonstrated the applicability of any recognized exception to the exhaustion requirement. The Second Circuit has explained that, "[e]ven if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law." *Ramirez*, 280 F.3d at 94. Here, Petitioner's claim is procedurally barred as a result of being unexhausted. However, on habeas review, a claim that is otherwise procedurally barred must be dismissed on the merits unless a Petitioner can "show cause for the default and prejudice or demonstrate that failure to consider the claim will result in a miscarriage of justice." *Aparicio v. Artuz*, 269 F.3d

6

78, 90 (2d Cir. 2001). In determining whether "cause" exists for the procedural default, the Supreme Court has directed district courts to limit their inquiry to whether "some external impediment" inhibited the petitioner from asserting his claim. *Murray v. Carrier*, 477 U.S. 478, 492 (1986).

Here, the petition is devoid of any cause for Petitioner's default. Because Petitioner has failed to show cause for the default, the Court need not reach the question of prejudice. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice."). Likewise, Petitioner failed to offer evidence to support a conclusion that the dismissal of his petition would result in a miscarriage of justice. Indeed, on this record, the Court finds no basis to conclude that Petitioner is "actually innocent." *See Aparicio*, 269 F.3d at 90 ("For a procedurally defaulted claim to escape [dismissal], the petitioner must . . . demonstrate that failure to consider the claim will result in a miscarriage of justice (*i.e*., the petitioner is actually innocent)."). The petition for writ of habeas corpus is denied.[3]

---

[3] Even if the Court were to find that an exception applied and the default was excused, the petition would nonetheless be denied. Petitioner maintains that the trial court judge acted unethically and with prejudice towards him by forcing him to take the plea. (Pet. at Ex. A.) As such, Petitioner contends that his guilty plea was "unlawfully induced or not made voluntarily with understanding of the nature of the charge and consequence of the plea." (*Id.* at 5.) A guilty plea is intelligent and voluntary, however, when a defendant had the advice of counsel, understood the consequences of the plea, and the plea was not physically or mentally coerced. *See Brady v. United States*, 397 U.S. 742, 747–52 (1970). The record reflects that the trial court provided Petitioner with multiple opportunities to confer with counsel before entering into the plea. Petitioner informed the court that he had not been threatened to plead guilty, was not under any pressure, and had enough time to discuss the plea with his attorney. (Pet. at 12.) Likewise, Mr. Sidoti testified that he had discussed the plea with Petitioner "at length," believed that Petitioner "always understood [their] discussions [and] what was going on with the court," and understood Petitioner's reluctance was not grounded in any misunderstanding of the proceeding. (Mar. 17, 2011 Hr'g Tr. 15, 18.) Additionally, the court advised Petitioner that if he chose to plead guilty, he would be giving up certain rights such as presenting a defense, calling witnesses, and permitting his attorney to cross examine prosecution witnesses.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for a writ of habeas corpus is DENIED. Because Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability will issue. *See* 28 U.S.C. § 2253(c); *see also Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal in forma pauperis from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to close the case.

SO ORDERED:

    /s/ LDH
LaSHANN DeARCY HALL
United States District Judge

Dated: Brooklyn, New York
      March 5, 2020

---

(Jan. 20, 2011 Hr'g Tr. 8–11.) Moreover, when Petitioner indicated he wished to go to trial, the court immediately took affirmative steps to prepare for trial such as inquiring about witnesses, discussing the trial schedule, and directing the court officers to bring in the jury pool. (*Id.* at 7.) Petitioner simply changed his mind. And, Petitioner's contention that his plea was involuntary is without merit. *See Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004) (denying habeas petitioner's contention that his plea was not voluntary, knowing, and intelligent because petitioner's claims regarding his inability to comprehend the plea proceeding and his unpreparedness to enter a plea are belied by the record and are contrary to petitioner's express representations during the plea).